IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER RONDINELLI REILLY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 3:24-cv-240-K |
| V. | § | |
| | § | |
| ONLINE LAND MARKET, LLC, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Jennifer Rondinelli Reilly has filed a Motion for Default Judgment against Defendant Online Land Market, LLC. *See* Dkt. No. 19.

United States District Judge Ed Kinkeade has referred this motion to the undersigned United States Magistrate Judge for findings, conclusions, and recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 20.

For the following reasons, the Court should grant Plaintiff Jennifer Rondinelli Reilly's Motion for Default Judgment against Defendant Online Land Market [Dkt. No. 19].

## Background

Plaintiff Jennifer Rondinelli Reilly filed this lawsuit alleging an action for copyright infringement under the United States Copyright Act, 17 U.S.C. § 101 *et seq.*, and for violations of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. §1202. *See* Dkt. No. 1.

-1-

Reilly is a Wisconsin-based professional freelance photographer who specializes in landscapes and outdoor photography. *See id.* at 1. She created the photograph entitled "Scenic-view-Sedona-Arizona-Jennifer-Rondinelli-Reilly-01" (the "Work"). *See id.* at 2 And she applied copyright management information ("CMI") to the Work by watermarking it with the words "Jennifer Rondinelli Reilly Fine Art Photographs" in white at the bottom right corner. *See id.* at 3.

She alleges that she registered the Work with the Register of Copyrights in 2016 and was assigned registration number VA 2-032-827. *See id.* at 3.

Reilly contends that Online Land Market, a Texas land investment company, copied the Work without permission and displayed a copy of it on its website to advertise land it was trying to sell. *See id.* at 4. Reilly asserts that Online Land Market "made further copies and distributed the Work on the internet" to promote its business. *Id.* And, in doing so, Online Land Market removed Reilly's CMI and applied its own false CMI to the Work. *See id.* at 7.

Reilly seeks to enjoin and permanently restrain Online Land market from committing further infringement. *See id.* She also seeks to recover statutory damages for copyright infringement and violations of the DMCA, prejudgment interest, and her attorneys' fees and costs. *See id.* at 8; Dkt. No. 19 at 2.

Reilly properly served process on Online Land Market on February 2, 2024. *See* Dkt. No. 11.

Online Land Market failed to answer, and Reilly filed a request for entry of default against it. *See* Dkt No. 12.

The Clerk of Court entered default as to Online Land Market on May 2, 2024. *See* Dkt. No. 17.

Reilly then moved for default judgment against Online Land Market. *See* Dkt. No. 19.

## Legal Standards

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2). A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013). The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of

Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See*

*id.*

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

### Analysis

## I. <u>The Court has subject matter jurisdiction and personal jurisdiction.</u>

Reilly has shown the Court has subject mater jurisdiction.

The Court has jurisdiction under 28 U.S.C. § 1331 because this is a "civil action[] arising under the ... laws ... of the United States." 28 U.S.C. § 1331. Reilly brings this action under the Copyright Act, a federal law. *See* Dkt. No. 1 at 2.

A judgment "without personal jurisdiction is void," and a "district court has the duty to ensure it has the power to enter a valid default judgment." *Sys. Pipe & Supply*, 242 F.3d at 324.

For purposes of diversity jurisdiction, "[t]he citizenship of a limited partnership

is based upon the citizenship of each of its partners." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).

But, as to personal jurisdiction, neither the Supreme Court nor this circuit have explicitly addressed the question of whether an LLC's place of incorporation or principal place of business establish a basis for general jurisdiction. But the Supreme Court has implicitly provided guidance by applying the paradigm for assessing a corporation's general jurisdiction to an LLC. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (assessing whether an LLC had general jurisdiction by looking to its place of incorporation and principal place of business).

And two district courts in this circuit have rejected an extension of *Harvey's* reasoning to a finding of personal jurisdiction. *See e.g.*, *Carruth v. Michot*, No. A-15-CA-189-SS, 2015 WL 6506550, at *7 (W.D. Tex. Oct. 26, 2015) (explaining that "[the] argument lacks merit as it blurs principles of diversity jurisdiction and minimum contacts and ignores the Supreme Court's prohibition on 'talismanic jurisdictional formulas'"); *Becnel v. Lamorak Ins. Co.*, No. CV 19-14536, 2022 WL 3369164, at *2 (E.D. La. Aug. 16, 2022) ("[t]he decisions in *Daimler* and *Goodyear* also apply equally to limited liability corporations").

And, so, the Supreme Court's equal application of the law and reasoning from courts in this circuit support the position that an LLC should be treated as a corporation for purposes of personal jurisdiction.

Here, Online Land Market is a limited liability company with its principal place of business in Dallas, Texas. *See* Dkt. No. 1 at 2.

And, so, this Court has personal jurisdiction over Online Land Market.

## II.     <u>The procedural requirements for default judgment have been met.</u>

Reilly has satisfied the prerequisites for entry of default judgment against Online Land Market.

Reilly served Online Land Market on February 2, 2024. *See* Dkt. No. 11. And the Clerk of Court entered Default against it on May 2, 2024. *See* Dkt. No. 17.

Online Land Market is not a natural person and so cannot be a minor, incompetent person, or in the military service.

And, so, Reilly meets the procedural requirements for entry of default against Online Land Market.

## III.     <u>Reilly's pleadings support default judgment.</u>

Reilly's Complaint alleges copyright infringement and DMCA violations.

A. <u>Copyright Infringement</u>

To succeed on a claim of copyright infringement, a claimant must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

The first element, copyright ownership, is shown by proof of originality and copyrightability, and compliance with the applicable statutory requirements. *See id.* "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least a minimal degree of creativity." *Feist,* 499 U.S. at 345 (1991). As to the second element, the plaintiff must prove actionable copying and substantial

similarity between the copyrighted work and the allegedly infringing work. *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir. 2003). The copyrighted work and the allegedly infringing work are substantially similar if "a layman would view [them] as substantially similar" on "side-by-side comparison." *Id.* (cleaned up).

As to the first element, Reilly's copyright registration of the Work is prima facie evidence of its ownership and validity. *See* Dkt. No. 1-1 at 2-3; *see also John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *4 (N.D. Tex. May 1, 2013). Reilly's Work was first published on March 14, 2016, and the copyright registration became effective on October 4, 2016 – less than one year after publication. *See Dagel v. Resident News, LLC*, No. 3:11-cv-663-L, 2012 WL 2068727, at *7 (N.D. Tex. June 8, 2012) (citing 17 U.S.C. § 410(c)).

And the Work meets the originality requirement because Reilly alleges that she created the photograph, and it possesses at least some minimal degree of creativity.

As to the second element, Reilly alleges that Online Land Market used an exact, full-sized copy of the Work on its website, without authorization. *See* Dkt No. 19 at 6-7. And to support her claim, Reilly produced a copy of the Work, *see* Dkt. No. 1 at 3, and a screenshot of Online Land Market's website displaying the allegedly infringing image, *see* Dkt No. 1-2 at 2. On side-by-side comparison, a layman would find the Work and the allegedly infringing image more than substantially similar.

And, so, the Court should conclude that Reilly's Complaint and supporting materials sufficiently allege the necessary elements of her copyright infringement claim against Online Land Market.

Because Reilly pled willful infringement, *see* Dkt. No. 1 at 5, the undersigned turns to whether Online Land Market's actions were willful to support an award of enhanced damages. *See* 17 U.S.C. § 504(c)(2). A defendant acts "willfully" within the meaning of Section 504(c)(2) when they "know[] [their] actions constitute an infringement," even if the actions were not malicious. *See Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988).

Reilly alleges that she notified Online Land Market in writing of her copyright in the Work twice in September 2023 and demanded that it cease the infringing use of the Work and to pay a license fee. *See* Dkt. No. 1 at 5; Dkt. No. 19 at 7. And in reproducing the Work on its website, Online Land Market removed Reilly's CMI from the Work and applied its own false CMI. *See* Dkt. No. 1 at 7. Specifically, Online Land Market asserted ownership of Reilly's Work by including its name and logo at the top of the image. *See* Dkt. No. 1-2 at 2.

Based on these allegations, the Court should find that Reilly has sufficiently pled a willful violation, and an award of enhanced damages is warranted. *Accord John Perez Graphics*, 2013 WL 1828671, at *4.

B.  <u>DMCA Violations</u>

Reilly alleges that Online Land Market violated the DMCA by removing her CMI and applying its own false CMI to the Work. *See* Dkt. No. 1 at 7.

Section 1202(a) of the DMCA prohibits a person from "knowingly and with the intent to induce, enable, facilitate, or conceal infringement: (1) provide copyright management information that is false; or (2) distribute or import for distribution

copyright management information that is false." 17 U.S.C. § 1202.

Section 1202(b) of the DMCA probits a person from "intentionally remov[ing] or alter[ing]" any CMI from a work or "distribut[ing] or import[ing] for distribution" CMI knowing that the CMI has been removed or altered without authority of the copyright owner. 17 U.S.C. § 1202(b)(1).

The Fifth Circuit defines CMI broadly as "any of the following information conveyed in connection with copies ... of a work," including "[t]he title and other information identifying the work," 17 U.S.C. § 1202(c)(1); "[t]he name of, and other identifying information about," the author, copyright owner, or performer, *Id.* § 1202(c)(2)-(4); or "[s]uch other information as the Register of Copyrights may prescribe by regulation," *id.* § 1202(c)(8). *See Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 277 (5th Cir. 2020).

Based on the entry of default, Reilly's allegations of Online Land Market's removal of CMI and placing false CMI on Reilly's Work are taken as true. Dkt. No. 1 at 6-7.

Reilly applied CMI to the Work by watermarking it with the words "Jennifer Rondinelli Fine Art Photographs" in white at the bottom right corner of the Work. *See* Dkt. No. 19 at 8-9. Reilly has shown that Online Land Market violated Section 1202(b) of the DMCA by removing her CMI from the Work. *See* Dkt. No. 1-2 at 2.

And Online Land Market violated Section 1202(a) by substituting its CMI in the form of its name and logo at the top of the image. *See id.*

## IV.  **Entitlement to Damages**

Reilly's motion for default judgment seeks to recover a judgment for injunctive relief, statutory damages for copyright infringement and violations of the DMCA, prejudgment interest, and her attorneys' fees and costs. *See* Dkt. No. 1 at 7-8.

### A.  **Permanent Injunction**

Reilly requests a permanent injunction enjoining and restraining Online Land Market from further infringing any of Reilly's copyrighted work. See *id.* at 7; Dkt. No. 19 at 18.

Under 17 U.S.C. § 502(a), a court has the power to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (quoting 17 U.S.C. § 502(a)). "Permanent injunctions are not awarded lightly, but a copyright owner is entitled to such relief in order to prohibit further infringement where the requirements are met." *Mouse On Tha Track LLC v. Parg Mgmt. LLC*, No. 3:18-cv-2980-S-BH, 2019 WL 6970946, at *6 (N.D. Tex. Nov. 13, 2019) (cleaned up).

To establish entitlement to permanent injunctive relief in copyright infringement cases, the party seeking the injunction must demonstrate the following: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest." *Arista Records, Inc. v. Kabani*, No. 3:03–CV–1191–H, 2004 WL 884445, at *4 (N.D. Tex. Apr. 23, 2004) (citing *DSC Comm'ns Corp. v. DGI Tech., Inc.,* 81 F.3d 597, 600 (5th Cir.1996)).

-11-

Here, the relevant factors favor the entry of a permanent injunction.

"Courts have acknowledged that default against a defendant is tantamount to actual success on the merits and that a permanent injunction may be issued as part of a default judgment." *Mouse On Tha Track*, 2019 WL 6970946, at *5 (citing *Twist & Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 785 (E.D. Tex. 2006)).

And, so, Reilly has satisfied the first element.

Reilly alleges that she has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Online Land Market. *See* Dkt. No. 19 at 17-18. And Online Land Market's unauthorized use for its own commercial benefit "greatly impairs the market value of the Work." *Id.* at 18.

There has been no showing that requiring Online Land Market to restrain from future infringement will cause it harm, and any potential harm caused by requiring it to comply with the law is insignificant compared to the continuing harm to Reilly's livelihood if the injunction is not granted. *Accord Mouse On Tha Track*, 2019 WL 6970946, at *6.

And the public interest supports entering an injunction by "preserving rights provided by federal copyright law." *Lakedreams v. Taylor*, 932 F.2d 1103 (5th Cir. 1991).

And, so, Reilly's request for a permanent injunction is appropriate and should be granted.

## B. <u>Statutory Damages</u>

### i. <u>Copyright Infringement</u>

Reilly seeks statutory damages of $180,930.00 on its copyright infringement claim against Online Land Market. *See* Dkt. No. 19 at 15.

A successful plaintiff in a copyright infringement case must choose between actual and statutory damages. 17 U.S.C. § 504(a); *In re Isbell Records, Inc.*, 774 F.3d 859, 873 (5th Cir. 2014). If the plaintiff elects statutory damages, the amount available is "not less than $750 or more than $30,000" for each work infringed. *Id.* § 504(c)(1); *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 394 (5th Cir. 2014).

If the infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

"The Copyright Act provides district courts wide discretion in awarding damages in a copyright case—within those limits set by the statute." *Mouse On Tha Track*, 2019 WL 6970946, at *7. And "statutory damages should be awarded in an amount sufficient to deter future copyright infringement." *EMI Apr. Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 625 (N.D. Tex. 2008).

"In light of the deterrent purpose of statutory damages, courts frequently award statutory damages in amounts that are between two and three times the license fee refused by the defendant." *Id.*

Here, Reilly stated in her declaration that "[t]he Fair Market Value of the Work, had Online Land Market requested a license to reproduce and display the copyrighted Work on its Website, without attribution, is $36,186.00 per year, for a rights managed license." Dkt. No. 19-1 at 4. She provided an exhibit showing the same. *See* Dkt. No. 19-3.

-13-

And she contends that "the licensing fee alone does not take into contemplation the scarcity of the Work," which increases its value, and the Work has "lost significant value by the widespread and continuing dissemination resulting from Online Land Market's infringement." Dkt. No. 19-1 at 4.

Here, Reilly elects statutory damages and requests $180,930.00 for the willful infringement of one image. *See* Dkt. No. 19 at 15.

As discussed above, the undersigned finds that Online Land Market willfully infringed on Reilly's Work. And, so, an award of enhanced damages is warranted.

But the requested amount ($180,930.00), which represents approximately five times the amount of the annual licensing fee ($36,186.00) that Online Land Market would have been required to pay had they requested to license the Work, exceeds the statutory maximum for a willful violation. *See* Dkt. No. 19 at 12-15.

And, assuming the requested amount was within the statutory limits, the undersigned is not persuaded that the circumstances of this case justify applying a multiplier of five (5) in lieu of the standard multiplier of two (2) to three (3).

Here, a multiplier of two (2) is appropriate. *Accord John Perez Graphics*, 2013 WL 1828671, at *4 (applying a multiplier of two to plaintiff's normal licensing fee for use on a licensee's website in awarding enhanced damages for a willful violation).

And, so, applying a multiplier of two (2) to Reilly's customary licensing fee ($36,186.00), she is entitled to a statutory damages award of $72,372.00 on her copyright infringement claim against Online Land Market.

-14-

ii. <u>DMCA Violations</u>

Section 1203 of the DMCA provides that "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B).

The statute does not define "each violation." But federal district courts have interpreted "each violation" to mean "each violative act." *See, e.g.*, *DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, No. cv H-16-1442, 2018 WL 11358474 (S.D. Tex. Oct. 10, 2018); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 WL 4366990, at *42 (S.D. Tex. Oct. 27, 2010); *McClatchey v. Associated Press*, No. 305-cv-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007).

Reilly contends that Online Land Market's conduct amounts to four separation violations of the DMCA: two claims for addition of false CMI and distribution of materials including false CMI under Section 1202(a); and two claims for its removal of CMI and distribution of the Work under Section 1202(b). *See* Dkt. No. 19 at 8-11.

And, so, in bringing her DMCA claims against Online Land Market, Reilly separates the two subsections of the DMCA into independent violations.

A district court in the Eastern District of New York, facing a similar issue, employed general principles of statutory construction and "read[] and interpret[ed] the two subsections independently because it is the Court's 'duty to give effect, if possible, to every clause and word of a statute.'" *Sheldon v. Plot Com.*, No. 15CV5885CBACLP, 2016 WL 5107072, at *15 (E.D.N.Y. Aug. 26, 2016) (quoting

*Duncan v. Walker*, 533 U.S. 167, 174 (2001)). And, in doing so, "courts have interpreted separate subsections of a statute as 'provid[ing] for . . . separate and . . . different penalties.'" *Sheldon*, 2016 WL 5107072, at *15.

The court in *Sheldon* noted that it could not find any legislative history specifically addressing this issue and stated that

> Section 1202(a) prohibits the addition of copyright information that falsely represents the ownership of the copyright: "No person shall knowingly ... provide copyright information that is false." By contrast, Section 1202(b), which states, "No person shall... intentionally remove or alter any copyright information," clearly prohibits the removal of existing copyright information from a work or a copy of that work. Thus, the two subsections of the statute appear to be aimed at different types of conduct. Since it is entirely possible for an infringing defendant to remove valid copyright information without adding false copyright information and to add false copyright information without removing the existing copyright information, it is reasonable to conclude that Congress intended these two subsections to be construed as prohibiting different conduct.

*Id.* (cleaned up).

And, so, separating the act of removal of CMI from the act of addition of false CMI into two different subsections under Section 1202 of the DMCA warrants consideration of each as a separate violation. *Accord id.* at *16 (finding the same).

But Reilly's assertion that she can recover for multiple violations of the same subsection – addition of false CMI to the Work and distribution under Section 1202(a) and removal of CMI from the Work and distribution under Section 1202(b) – is not supported by this interpretation of DMCA from *Sheldon* or authority from courts in the Northern District of Texas evaluating DMCA claims in a default judgment context. *See e.g.*, *John Perez Graphics*, 2013 WL 1828671, at *4; *Verch v. White Rock Sec. Grp.*,

-16-

*LLC*, No. 3:19-cv-1457-S, 2020 WL 4550419, at *3-*4 (N.D. Tex. June 30, 2020); *Crenshaw Media Grp. LLC v. Davis*, No. 3:17-cv-2204-N, 2018 WL 3496473, at *2 (N.D. Tex. July 20, 2018).

And, so, the Court should not find that Reilly is entitled to "double up" for violations of the same subsection under different theories of recovery and should award damages for two separate violations of the DMCA.

Reilly seeks the statutory maximum of $25,000 for each violation.

"As relief for violations of the DMCA, the award of statutory damages is especially fitting in the default judgment context where [p]laintiffs are without the benefit of any disclosure by the infringer, leaving damages uncertain." *Sheldon*, 2016 WL 5107072, at *13.

But courts in this district in factually similar cases have awarded far less than the statutory maximum for DMCA violations. *See e.g.*, *Verch*, 2020 WL 4550419, at *4 (finding that $5,000 in statutory damages under the DMCA is appropriate in default judgment context after surveying cases); *RBH Energy, LLC v. Partners in Church Consulting, LLC*, No. 3:15-cv-3988-N, 2016 WL 6496362, at *1 (N.D. Tex. May 6, 2016) (awarding statutory damages of $5,000.00 where defendant removed plaintiff's CMI and substituted it for its own "attempt[ing] to conceal its infringement"); *John Perez Graphics*, 2013 WL 1828671, at *4 (awarding $10,000 in statutory damages for one DMCA violation where defendant willfully removed plaintiff's CMI and substituted defendant's CMI in the form of a copyright notice at the bottom of its webpage).

After considering this range of awards, the Court should find that $7,500 per

violation, for a total award of $15,000, is reasonable and sufficient to compensate Reilly and deter future violations of the DMCA.

### C. **Attorneys Fees' and Costs**

Reilly seeks attorneys' fees in the amount of $3,490.00 and costs in the amount of $540.50, for a total amount of $4,030.50. *See* Dkt. No. 19 at 17.

The Copyright Act "expressly provides for awards of attorney's fees as well as costs." 17 U.S.C. § 505. Although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely. *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985).

The Supreme Court has stated that the language of Section 505 does not provide a "precise rule or formula for making the[ ] determination" of whether to award fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994). But it does, grant district courts "wide latitude to award attorney's fees based on the totality of circumstances in a case." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 203 (2016). Some non-exclusive factors to consider in awarding attorney's fees under Section 505 include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence." *Fogerty*, 510 U.S. at 533.

Examining the totality of the circumstances, the undersigned finds that Reilly is entitled to her attorneys' fees and costs incurred to defend her legal rights against Online Land Market's infringement.

This Court then uses the 'lodestar' method to calculate attorneys' fees."

*Heidtman v. Cty. Of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith v. Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).

The parties seeking reimbursement of attorneys' fees bear the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended.

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). But, "after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

In support of her request for attorney's fees and costs, Reilly provided the declaration of Marian V. Quintero, whose firm SRIPLAW represented Reilly in this matter. *See* Dkt. No. 19-2. In her declaration, Ms. Quintero states that her rate is $350.00 per hour and that she expended 4.0 total hours in this matter. *See id.* at 2.

Attorney Craig A. Wirth, who has a billing rate of $375.00 per hour, expended 2.0 total hours. *See id.* at 3. Paralegal Rebecca Pollack expended 4.6 hours working on the matter at a billing rate of $200.00 per hour and client services liaison Tyler Unfer expended 2.4 hours at billing rate of $175.00 per hour, resulting in a fee total of $3,490.00. *See id.*

Ms. Quintero provides a copy of the firm's billing records that itemize the various tasks she and her colleagues performed in this matter, with details regarding the specific work performed, the charges for that time, and costs incurred in bringing this suit — which equal $540.50. *See* Dkt. No. 19-4.

The billing records show that the hours expended in this matter and the costs incurred are reasonable under the circumstances of this case.

It is well-established that the Court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services. *See Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.,* 526 F.2d 865, 868 (5th Cir. 1976); *see also Vanliner Ins. Co. v. DerMargosian,* No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

The undersigned finds that $350.00 per hour for Ms. Quintero and $375.00 for Mr. Wirth are reasonable and within the market rate for attorneys handling copyright litigation in the Dallas area. *See Spear Mktg., Inc. v. Banscorpsouth Bank*, 2016 WL 193586, at *9-*10 (N.D. Tex. Jan. 14, 2016) (finding a reasonable hourly rate for copyright litigation in the Dallas area was between $150.00 and $400.00 per hour); *see*

*also Verch*, 2020 WL 4550419, at *5 (finding $425.00 per hour to be a reasonable rate in copyright case).

As for Ms. Pollack and Mr. Unfer, courts in this district have awarded fees in copyright cases based on rates of $150 per hour for a paralegal. *See SortiumUSA, LLC v. Hunger*, 2015 WL 179025, at *12 (N.D. Tex. Jan. 14, 2015).

The undersigned finds that $150 per hour is a reasonable rate for Ms. Pollack and $125 per hour is a reasonable rate for Mr. Unfer, considering the fee difference between paralegals and client services liaisons at their firm.

And, so, the undersigned finds the appropriate lodestar here to be calculated as 4.0 hours for Ms. Quintero at a rate of $350.00 per hour ($1,400.00), 2.0 hours for Mr. Wirth at a rate of $375.00 per hour ($750.00), 4.6 hours for Ms. Pollack at a rate of $150 per hour ($690.00), and 2.4 hours for Mr. Unfer at a rate of $125.00 per hour ($300.00), for a total award of $3,140.00. This amount is in addition to $540.50 in requested costs.

Upon consideration of the *Johnson* factors, the undersigned finds that no adjudgment to the lodestar figure is necessary. Here, Reilly's counsel does not seek an enhancement of attorneys' fees, and there are no other exceptional circumstances. *See S & H Indus.*, 2014 WL 1116700, at *6 ("As there is no evidence in support and no parties have moved for enhancement or reduction from the lodestar amount, the lodestar amount is presumed reasonable.").

And, so, the Court should find that Reilly is entitled to fees and costs in the amount of $3,680.50.

**D. <u>Prejudgment Interest</u>**

Reilly also seeks pre-judgment interest. *See* Dkt. No. 19 at 2.

When a cause of action arises out of a federal statute, federal law governs the award of pre-judgment interest – both as to its allowance and its rate. *See Carpenters Dist. Council v. Dillart Dep't Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir. 1994). In the Fifth Circuit,

> courts employ a two-step process to determine whether pre-judgment interest should be awarded: (1) whether the federal statute creating the cause of action precludes an award of pre-judgment interest; and (2) if not, whether an award of pre-judgment interest furthers the congressional policies of the federal act. If pre-judgment interest is available under this analysis, the district court has discretion to award it.

*R A Guthrie Co., Inc. v. Boparai*, No. 4:18-cv-080-ALM-KPJ, 2021 WL 1148957, at *18 (E.D. Tex. Mar. 1, 2021) (cleaned up).

The Copyright Act is silent as to the availability of pre-judgment interest. *See* 17 U.S.C. § 504; *Powell v. Penhollow*, 260 F. App'x 683, 691 (5th Cir. 2007). And the Fifth Circuit has yet to hold whether an award of pre-judgment interest would further the congressional policies behind the Copyright Act. *See Powell*, 260 F. App'x at 691.

But "[a] district court has discretion to impose a pre[-] and post-judgment interest award to make a plaintiff whole." *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 488 (5th Cir. 2000). And courts in this district have awarded pre-judgment interest at a rate of five percent (5%) per annum, to be compounded as simple interest, from the date of the original complaint until the filing of the final judgment. *See John Perez*

*Graphics*, 2013 WL 1828671, at *4.

And, so, to make Reilly "whole" and deter copyright infringement, the Court should award pre-judgment interest at a rate of five percent (5%) per annum, to be calculated as simple interest, accruing from January 31, 2024 – the date Reilly filed her Complaint – until the day before entry of final judgment.

## V.    <u>Consideration of other factors supports default judgment.</u>

Although default judgment is a harsh remedy, Online Land Market's failure to answer Reilly's complaint supports default judgment. There has not been substantial prejudice against Online Land Market. There are clearly established grounds for default: it failed to answer Reilly's complaint. And there is no indication that its default was caused by good faith mistake or excusable neglect.

And, so, the Court would not necessarily feel obligated to set aside a default (should a motion to do so be filed). *See Lindsey*, 161 F.3d at 893.

### Recommendation

The Court should grant Plaintiff Jennifer Rondinelli Reilly's Motion for Default Judgment against Defendant Online Land Market [Dkt. No. 19].

Defendant Online Land Market should be permanently enjoined from further infringing any of Reilly's copyrighted work.

And Plaintiff Jennifer Rondinelli Reilly should be awarded statutory damages of $87,372, attorneys' fees and costs in the amount of $3,680.50, and pre-judgment interest at a rate of five percent (5%) per annum, to be calculated as simple interest, accruing from January 31, 2024 – the date Reilly filed her Complaint – until the day

before entry of final judgment.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 24, 2025

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE